**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**
**CIVIL ACTION NO. _____**

UNITED OUTDOOR MEDIA, LLC                                    PLAINTIFF
360 North Main Street
London, Kentucky 40741

And

HUNTINGTON OUTDOOR, LLC                                      PLAINTIFF
dba Huntington Billboards
524 ½ South Broadway
Greenville, Ohio 45331

And

SUMMIT LOCATIONS, LLC                                        PLAINTIFF
562 Congress Park
Centerville, Ohio 45459

And

J.R. PROMOTIONS, LLC                                         PLAINTIFF
Dba JR Billboards
430 Second Street
Columbus, Indiana 47201

vs.

JIM GRAY, IN HIS OFFICIAL CAPACITY                           DEFENDANT
AS SECRETARY, KENTUCKY
TRANSPORTATION CABINET
c/o Daniel Cameron, Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601

Also serve:

Office of the Secretary
Kentucky Transportation Cabinet
200 Mero Street
Frankfort, Kentucky 40622

---

## COMPLAINT

---

Now comes the Plaintiffs, United Outdoor Media, LLC, Huntington Outdoor, LLC, Summit Locations, LLC, and J.R. Promotions, LLC, by and through counsel and hereby state as follows for their Complaint:

### PARTIES AND JURISDICTION

1. Plaintiff, United Outdoor Media, LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business in Laurel County, Kentucky.

2. Plaintiff, Huntington Outdoor, LLC, does business as Huntington Billboards and is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Darke County, Ohio.

3. Plaintiff, Summit Locations, LLC, is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Montgomery County, Ohio.

4. Plaintiff, J.R. Promotions, LLC, is a limited liability company organized and existing under the laws of the State of Indiana which does business as JR Billboards and has its principal place of business in Bartholomew County, Indiana.

5.     Defendant, Jim Gray, is named only in his official capacity as Secretary of the Kentucky Transportation Cabinet.

6.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this being a civil action arising under the Constitution and the laws of the United Sates.  Jurisdiction is also conferred upon this Court by 28 U.S.C. § 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988, this being an action for declaratory judgment and equitable relief authorized by law to redress deprivations of rights under color of law, privileges and immunities secured by the Constitution of the United States.  Jurisdiction over state law claims is conferred by 28 U.S.C. § 1367 as authoritatively construed in *Chicago v. Illinois College of Surgeons*, 522 U.S. 156 (1997).

7.     Venue is proper in this judicial district by 28 U.S.C. § 1391(b) because Defendant maintains one or more offices in this judicial district, including one in Frankfort, Kentucky.  Venue is also proper because a substantial part of the events giving rise to the claims took place in this judicial district.

8.     At all times pertinent to this Complaint, and in taking all of the actions described in this Complaint, Defendant, his officers, agents, and employees, acted under color of law and were effecting, and will effect, the custom, policy, and laws of the Commonwealth of Kentucky.

9.     Pursuant to K.R.S. § 418.05, Attorney General, Daniel Cameron, is provided notice of this action by serving a copy of this Complaint electronically at servethecommonwealth@ky.gov pursuant to direction of the Attorney General's Office. Plaintiffs have, or will, comply with this and other applicable service and notice requirements of the Attorney General.

## **FACTS**

10.     Plaintiffs, United Outdoor Media, Huntington Outdoor, Summit Locations, and JR Billboards, are engaged in the business of outdoor advertising which consists broadly of owning or leasing real property upon which to construct and operate signs to be used for the dissemination of both commercial and noncommercial speech.

11.     Plaintiffs' signs convey commercial speech, such as the paid advertisements of businesses, as well as noncommercial speech consisting of such subjects as religious, political, and informational messages, and messages of not-for-profit organizations, both paid and unpaid.  The signs owned, controlled, and operated by Plaintiffs make valuable contributions to public discourse on a wide range of subjects.  Plaintiffs' signs are often used to engage in current political and social discourse and are often employed by customers on such subjects because they are relatively inexpensive and easily accessible to the public, both locally and to those engaged in interstate commerce.

12.     Plaintiffs also publish their own messages, maintain editorial control over third-party speech that they publish, and publish certain speech on their signs without receiving financial compensation.

13.     The content, diversity, and relevance of speech on outdoor advertising signs cannot be overstated.  Such speech is constitutionally protected in the same manner and degree as speech communicated through other forms of public media such as newspapers, television, and the internet.

14.     The United States Supreme Court has recognized outdoor advertising as a "venerable medium" which has played "a prominent role throughout American history" and is afforded protections under the First Amendment of the United States Constitution.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 500 (1981). Likewise, the Supreme Court of Kentucky recognizes the free speech protections of the First Amendment as applied to billboards. *Flying J Travel Plaza v. Commonwealth, Transportation Cabinet, Dept. of Highways*, 928 S.W. 2d 344 (1996).

15.     Kentucky's statutes and regulations governing outdoor advertising are set out in Sections 177.830 through 177.890 of the Kentucky Revised Statutes (the "Kentucky Billboard Act"), and Title 603, Chapter 10 of the Kentucky Administrative Regulations.

16.     Kentucky's statutes and laws concerning outdoor advertising were determined unconstitutional on April 24, 2020 by the United States District Court, Western District of Kentucky, in an action styled *L.D. Mgmt. Co. v. Thomas,* 456 F. Supp. 3d 873 (W.D. Ky. 2020). The United States District Court declared Kentucky's outdoor advertising regulatory scheme unconstitutional in its entirety on the ground that it constituted an impermissible content-based restriction of free speech. Further, the United States District Court enjoined the Kentucky Transportation Cabinet from enforcing the Kentucky Billboard Act. The Sixth Circuit Court of Appeals affirmed the decision of the United States District Court on February 16, 2021 in *L.D. Mgmt. v. Gray*, 988 F.3d 836 (6th Cir. 2021).

17.     As of April 24, 2020, the Commonwealth of Kentucky had no lawful regulatory scheme for outdoor advertising and had no laws governing outdoor advertising. The Kentucky Transportation Cabinet acknowledged this state of affairs by prominently posting on the outdoor advertising portion of its website that it was exercising an "interim moratorium" on the issuance of outdoor advertising permits.

18.     On March 18, 2021, the Kentucky General Assembly re-enacted and amended KRS Chapter 177.830 through 177.890, a true and accurate copy of which is attached as EXHIBIT 1.

19.     In re-enacting and amending the statute, the General Assembly made two primary changes to Kentucky law.  First, it implemented a permit fee system in connection with permits for outdoor advertising signs.  Second, it changed the definition of outdoor advertising from a content-based regulatory scheme defined by the content of the message communicated by the sign to a content-neutral scheme based upon whether the sign is primarily used for economic activity independent of the on-site use.  This second change was meant to make the law constitutional in light of recent judicial decisions.

20.     The re-enactment and amendment of the statute by the Kentucky General Assembly was substantially modeled after similar legislative changes implemented by the State of Tennessee in 2020.

21.     Prior to March 31, 2017, Kentucky and Tennessee had nearly identical statutory schemes for regulating outdoor advertising.

22.     On March 31, 2017, the United States District Court for the Western District of Tennessee found Tennessee's Billboard Regulation and Control Act to be unconstitutional as a content-based regulation of speech in an action styled *Thomas v. Schroer*, 248 F. Supp. 3d 868 (W.D. Tenn. 2017).  The Sixth Circuit Court of Appeals affirmed the United States District Court for the Western District of Kentucky in *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019).  The Sixth Circuit Court of Appeals denied en banc review, 937 F.3d 271 (2019), and the U.S. Supreme Court denied certiorari, 141 S. Ct. 194 (2020).

23.     In 2020, Tennessee adopted changes to its law to address its unconstitutionality.   The primary change to Tennessee law was replacing the prior content-based definition of outdoor advertising devices with a content-neutral definition based upon economic activity or compensation separate from the on-site use of the property.

24.     The remedial legislation enacted by Kentucky and Tennessee's general assemblies as a result of their previously unlawful statutes are substantially similar, the primary change being changes from content-based regulation to content-neutral regulation.

25.     Effective June 22, 2020, Tennessee changed the definition of "outdoor advertising device" to "… a sign that is operated or owned by a person or entity that is earning compensation directly or indirectly from a third party or parties for the placement of a message on the sign …" Tenn. Code Ann. § 54-21-102(18)(A).

26.     Effective March 18, 2021, Kentucky changed the definition of "advertising device" to as one "… operated and owned by a person or entity who is earning compensation directly or indirectly from a third party or parties for the placement of a message on the device."  KRS § 177.830(5)(a).

27.     The remedial legislation utilized by Kentucky is functionally identical to uniform legislation utilized by other states to remediate their unconstitutionality.  For example, aside from Tennessee, Ohio has also adopted similar legislation.  *See* Ohio Rev. Code § 5516.01 (changing definition from on-premise/off-premise definition to "… that is owned or operated by a person or entity that earns compensation for the placement of a message on it …" effective June 30, 2021).

28.     Because of the April 24, 2020 ruling in *L.D. Mgmt. Co. v. Thomas* (which was affirmed), from April 24, 2020 through March 18, 2021, Kentucky had no lawful regulatory scheme with respect to billboards and there was no state law prohibiting their construction.

29.     Tennessee had no lawful billboard statute between September 11, 2019 and June 22, 2020.  During this time billboards were constructed in Tennessee and, like the billboards here in issue those billboards were in existence when the corrective legislation was passed.

30.     When Tennessee adopted changes to its statutory scheme to provide a constitutional system of regulation it provided that signs constructed in Tennessee during this timeframe were either deemed legal conforming, or legal nonconforming, and were, and still are required to obtain a permit and tag from the Tennessee Department of Transportation pursuant to Tenn. Code Ann. § 54-21-104.  While there are a few reasons why a permit may be denied under Tennessee law, it cannot be denied "solely because the outdoor advertising device does not meet the size, lighting, spacing, or zoning criteria that are required for new outdoor advertising devices under current law to regulations."  TCA § 54-21-104(b)(2)(e).  And, while the statute also places limitations on changes that may be made to signs built during this period of time, the statute expressly allows for "customary maintenance."  Stated differently, the Tennessee statute did not retroactively attempt to prohibit billboards constructed after its statutes were ruled unconstitutional but before the effective date of the new statute and did not penalize such billboards so harshly that they were, essentially, regulated out of existence.

31.     Like Tennessee, the Kentucky General Assembly did not pass legislation which would retroactively prohibit signs built after the Kentucky statute was declared unconstitutional but prior to the effective date of the reenactment and amendment of the statute in March, 2021.   In fact, debate on the floor of the Kentucky House of Representatives specifically addressed that there was no provision in the legislation for retroactivity.

32.     In the re-enacted and amended statute the General Assembly made no mention of retroactive intent.  The retroactive application of legislation absent a clear legislative intent in that respect is impermissible.  *See, e.g., University of Louisville v. O'Bannon*, 770 S.W.2d 215, 216 (Ky. 1989).

33.     Plaintiffs are the owners of outdoor advertising devices which they constructed during the time when Kentucky's regulatory scheme had been declared unconstitutional and prior to March 18, 2021.

34.     Plaintiffs are parties to contracts with third parties to lease real estate upon which these outdoor advertising signs are situated. Such contracts were made and entered into prior to March 18, 2021.

35.     Plaintiffs are also parties to contracts with third parties whose messages appear on the faces of the signs. Such contracts were entered into prior to March 18, 2021.

36.     At the time Plaintiffs' leases were entered into, Plaintiffs' billboards were constructed upon leased property and advertising contracts were entered into, no law prohibited Plaintiffs from acquiring their property or rights.

37.     On July 30, 2021, Defendant enacted new emergency administrative regulations, a copy of which is attached as EXHIBIT 2 (the "Regulation"), pursuant to the

March 18, 2021 legislation enacted by the Kentucky General Assembly. However, despite the lack of any statutory authority from Kentucky's General Assembly whatsoever, Defendant created a completely new category of outdoor advertising devices defined as a "noncompliant advertising device" which was defined as an advertising device that was established between April 24, 2020 and March 18, 2021. Thus, while Kentucky and Tennessee made similar legislative changes to their laws, Tennessee expressly provided for signs established prior to the effective date of the legislation to be determined as legal nonconforming advertising devices. But, the Kentucky Transportation Cabinet, while maintaining a definition for nonconforming advertising devices, expressly created from whole cloth a completely new category with extreme restrictions that are tantamount to the complete elimination of signs falling within the definition.

38.     Under this new regulatory scheme, advertising devices falling within the noncompliant definition are only allowed minimum maintenance, may not be exchanged for a permit, may not be considered for eminent domain, and most significantly, are prevented from changing the copy or content of the sign, effectively stripping the sign of any viable use, economic or otherwise.

39.     To be clear: devices built between April 24, 2020 and March 18, 2021 are ostensibly permitted to remain standing and subject to permit fees, but they cannot be operated as outdoor advertising signs – which have periodic changes of sign copy or message content – going forward despite the fact that the re-enacted and amended statute was not retroactive. 603 KAR 10:040E, §§ 6(3)(b), 6(5), and 6(6).

40.     The new Regulation has the effect, *inter alia*, of prohibiting advertising changes on noncompliant billboards, thereby acting as a prior restraint of speech,

interfering with Plaintiffs' contract and property rights, and resulting in a complete loss of use of the property, all without any statutory authority and in defiance of constitutional norms. By requiring a permit and restricting the change of copy or content on the sign, the Regulation imposes a system of prior restraint that lack sufficient procedural safeguards and fail to provide for prompt judicial review as required by binding precedent. In this manner, the Regulation also compels speech by requiring the message communicated by the sign to remain unchanged.

41. Under the Regulation, all manner of constitutionally protected messages are prevented simply because they are new messages, not already appearing on the signs at issue. Whether or not signs are subject to this ban on new content is based exclusively on the date the device was "established."

42. There are hundreds of other similarly situated signs throughout Kentucky that are permitted to operate while "noncompliant" signs are prohibited from operation, with the sole distinction being the date on which the signs were constructed.

43. The Regulation's restriction on copy change is not only without statutory authority, but is otherwise unprecedented. By way of example, when Kentucky first implemented Chapter 177, it expressly designated advertising devices established before the effective date of the statute as nonconforming, making them both eligible for eminent domain compensation and containing no restriction as to maintenance or copy changes. KRS § 177.842.

44. Because the re-enacted and amended legislation contains no statutory authority for Defendant's actions, the Regulation designated the restrictions on copy to be a purported regulation of "maintenance" of an outdoor advertising device. This is a

pretext for retroactivity to circumvent the decisions of the U.S. District Court for the Western District of Kentucky and the Sixth Circuit Court Appeals. Neither Kentucky, nor any other state, has ever had the audacity to utilize such a sweeping restriction on private property, contract, and speech rights as a restriction on copy changes for signs established prior to the effective date of a law change. Indeed, the common and ordinary use and definition of the term "maintenance" is the process of maintaining or preserving something, or the state of being maintained. Changing the message on a sign is the very essence of the sign in its operation, and is not maintenance. It should be further noted that, prior to the Regulation, Kentucky had never defined or considered copy or message changes on signs as "maintenance."

45. The signs defined as "noncompliant" are in no way more dangerous or unattractive than other permitted billboards. The multitude of signs erected in other jurisdictions under similar circumstances, such as those recently installed in Tennessee, as well the multitude of signs in Kentucky which are nonconforming, are indicative that signs the Regulation designates as "noncompliant" are protected property and not a "safety issue" as alleged by Defendant.

46. The regulations classify signs as "noncompliant" based solely on the date they were constructed. There is no basis to make such a classification and there is no functional difference between Defendant's arbitrary creation of a the new "noncompliant" class unauthorized by statute and the category of nonconforming signs. Put simply, temporality cannot possible by a maintenance issue relevant to safety.

47. Defendant's actions in fabricating a "noncompliant" category of signs without any legislative authority is arbitrary, without legal authority, and has no basis in

fact. There is no basis to designate certain signs as a safety issue based only on the date they were constructed.

48.     The Regulation further differentiates between electronic and static advertising devices by allowing nonconforming advertising devices to be exchanged as credit towards a permit for an electronic advertising device but denies that exchange for the new "noncompliant" classification.

49.     Section 3 of the Regulation, concerning the exchange of advertising devices for a permit, does not justly compensate the owners of advertising devices.

50.     Kentucky's re-enacted and amended billboard statute does not state that it is retroactive, however, by its terms the Regulation is to be retroactively applied to ban the use of any billboard sign built prior to the effective date but after April, 24, 2020. Consequently, the Regulation is made retroactive.

51.     The Regulation renders advertising devices constructed by Plaintiffs in unzoned areas or in accordance with local zoning, sign, and building restrictions as "noncompliant," despite the fact that such advertising devices are not prohibited under Kentucky law.

52.     The Regulation makes no provision for severance of unlawful or illegal provisions.

53.     When the numerous unconstitutional provisions of the Regulation are struck, the remaining parts are so essentially inseparably connected with and dependent upon the unconstitutional parts that the remaining parts, standing alone, are incomplete and incapable of being executed.

54.     The entirety of the Regulation is unconstitutional, has damaged Plaintiffs, and will continue to damage Plaintiffs irreparably.

55.     By way of example, Summit and Huntington are currently displaying messages on signs deemed "noncompliant" under the Regulation for Kentucky Kingdom. These messages cannot be displayed after August 10, 2021 because the copy is dated and the message promotes an offer which expires.  Huntington advised Kentucky Kingdom that the Regulation precludes changing copy on these signs.  Kentucky Kingdom does not want the content to be displayed after the expiration of the promotional offer because it will make them appear poorly and untrustworthy.  Both Huntington and JR Billboards have contracts to display content for McDonald's which is required to change on August 23, 2021.  The inability to change this copy will result in the displaying of inaccurate content with expired offers and damage the relationship between Plaintiffs and the third party for whom they display content.  Huntington is also displaying content for Smithfield Meats which is utilizing signs to increase employment applications at their Kentucky facilities.  Like many businesses in Kentucky, Smithfield Meats is experiencing difficulties in attracting new employees and has found these signs to be a successful method to attract new applicants.  Huntington recently printed new sign displays with a wage increase to be communicated through the signs.  Smithfield and Huntington are unable to utilize this new copy as a consequence of the Regulation.

56.     The Regulation has also prevented Plaintiffs from communicating the unpaid speech of others, their own speech, and paid non-commercial speech.  To this end, Plaintiffs are unable to communicate speech such as content relating to recruitment for

the Kentucky National Guard, COVID-19, substance abuse treatment, veteran's advocacy and outreach, religious messaging, public safety, voting, and political speech.

57.    Plaintiffs bring this action seeking relief as follows: for temporary and/or preliminary and permanent injunctive and declaratory relief that the Regulation as a whole, and as applied to devices established between April 24, 2020 and March 18, 2021, constitutes an impermissible restriction on free speech in violation of the First and Fourteenth Amendments of the United States Constitution and Sections 1, 8 and 19 of the Constitution of the Commonwealth of Kentucky by unconstitutionally imposing a prior restraint of speech, by unlawfully regulating retroactively, and for unlawfully restricting free speech; for injunctive and declaratory relief establishing that the Regulation constitutes an impermissible restriction on the guarantees of equal protection in violation of the Fourteenth Amendment to the United States Constitution and Sections 1, 2 and 3 of the Commonwealth of Kentucky Constitution by unlawfully discriminating against identically situated parties and imposing palpably arbitrary classifications, by violating Sections 26, 27, 28, and 29 of the Commonwealth of Kentucky Constitution by usurping the roles of the legislature and judiciary by manufacturing arbitrary regulations without legislative authority; for alternative mandamus relief that the Regulation constitutes an impermissible taking of real and personal property under the Fifth and Fourteenth Amendments to the United States Constitution and Section 13 of the Kentucky Constitution and the Kentucky Eminent Doman Act of 1976, K.R.S. §§ 416.540 to 416.670, by taking property without due process of law and the payment of just compensation; for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201- 2202 and K.R.S. § 418.040; for monetary damages, attorneys' fees, expenses, and costs under 42 U.S.C. §

1983 and 1988; and for declaratory and injunctive relief regarding the parties' legal and constitutional rights as raised herein.

58.     Plaintiffs will be irreparably harmed if the Regulation is enforced as written in that they will be deprived of their right to free speech, deprived of property without just compensation, suffer impairment of existing contracts and further suffer a denial of equal protection under the law.

**COUNT ONE**
**VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION AND**
**SECTIONS 1, 2, AND 8 OF THE COMMONWEALTH OF KENTUCKY CONSTITUTION**

59.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

60.     The First Amendment of the United States Constitution guarantees that "Congress shall make no law ... abridging the freedom of speech."  The First Amendment of the United States Constitution is applicable to the Commonwealth of Kentucky through the Fourteenth Amendment of the United States Constitution.

61.     Section 1 of the Constitution of the Commonwealth of Kentucky guarantees that all people have the "inherent and inalienable rights" of "freely communicating their thoughts and opinions," and of "acquiring and protecting property."  Section 2 of the Constitution of the Commonwealth of Kentucky expressly denies the exercise of "absolute and arbitrary power over the lives, liberty and property" of persons.  Section 8 of the Constitution of the Commonwealth of Kentucky states that "[e]very person may freely and fully speak, write and print on any subject..."

62.     The United States Supreme Court and the Supreme Court of Kentucky have long recognized that billboards are a venerable medium of speech protected by the First and Fourteenth Amendments of the United States Constitution.  The Constitution protects Plaintiffs' signs and the noncommercial and commercial messages conveyed by the signs.  The Regulation constitutes an impermissible burden on the free speech rights of Plaintiffs, does not advance a compelling governmental interest and, if it did advance a compelling governmental interest, is not narrowly tailored in the least restrictive manner.

63.     By restricting the change of copy or messaging on signs designated as "noncompliant," the Regulation is a content-based and a speaker-based restriction on free speech by restricting the message communicated on the sign and the content from ever changing in the future.  The Regulation impermissibly restricts the communicative aspects of the signs and the speech that may be presented on them.  Because the Regulation requires enforcement authorities to make decision on whether certain signs violate the Regulation by examining the content and by the identity of the persons presenting the speech, and for the other reasons stated herein, the Regulation violates the First Amendment and Fourteenth Amendments to the United States Constitution and Sections 1, 2, and 8 of the Constitution of the Commonwealth of Kentucky.

64.     Additionally, the Regulation lacks any procedural safeguards and/or objective criteria to constrain discretion in permitting.  The Regulation is also underinclusive by allowing numerous other similarly, and in some cases identically situated, signs to change the copy or message presented on their face while severely restricting Plaintiffs' speech and presented on their signs.  The prohibition on change the

message is a direct regulation of the speech itself and, accordingly, the Regulation is an unconstitutional prior restraint of speech which is arbitrary, capricious, and/or unfounded, and otherwise results in arbitrary deprivation of Plaintiffs' and others' free speech rights. Further, the Regulation imposes compelled speech by forcing Plaintiffs to display certain content. The Regulation chills speech in a manner unrelated to any claimed governmental interest, or any claimed interest can be equally protected with less burdensome alternatives.

65. Based upon the foregoing, Plaintiffs seek a declaratory judgment declaring the Regulation unconstitutional on its face and as applied to Plaintiffs, enjoining Defendant from enforcing any portion of it, and for compensatory damages in an amount to be determined at trial.

66. In the alternative, in the event it is determined by this Court that Defendant lawfully adopted and promulgated the Regulation, and that the Regulation was authorized by Kentucky's statutes, then Plaintiffs assert that the statute is unconstitutional for the same reasons stated above.

## COUNT TWO
## VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

67. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

68. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."

69.     By Defendant's acts, omissions, and conduct as set forth herein including, without limitation, by the creation of arbitrary classifications based only upon date on construction and without any legal basis, Defendant has acted in an arbitrary, discriminatory, capricious, and unreasonable manner.

70.     The Regulation created by Defendant is not based on any statutory authority and bears no real or substantial relationship to public safety.

71.     Based upon the foregoing, Plaintiffs seek a declaratory judgment declaring the Regulation unconstitutional on its face and as applied to Plaintiffs, enjoining Defendant from enforcing any portion of it, and for compensatory damages in an amount to be determined at trial.

72.     In the alternative, in the event it is determined by this Court that Defendant lawfully adopted and promulgated the Regulation, and that the Regulation was authorized by Kentucky's statutes, then Plaintiffs assert that the statute is unconstitutional for the same reasons stated above.

**COUNT THREE**
**DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND SECTIONS 1, 2, AND 3 OF THE COMMONWEALTH OF KENTUCKY CONSTITUTION**

73.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

74.     The Fourteenth Amendment of the United States Constitution that a governmental entity may not deny a person within its jurisdiction the equal protection of the laws.

75.     Sections 1, 2, and 3 of the Commonwealth of Kentucky Constitution embrace the Equal Protection Clause of the Fourteenth Amendment to the U.S.

Constitution.  *Commonwealth, Revenue Cabinet v. Smith*, 875 S.W.2d 873 (Ky. 1994), *cert. denied*, 513 U.S. 1000 (1994).

76.     When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all person subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Enquist v. Oregon Dept. of Ag.*, 553 U.S. 591, 602 (2008).

77.     The Regulation intentionally treats identically situated individuals differently based only upon the time in which the regulated device was established.

78.     There is no rational basis for the different ways in which the Regulation treats certain speech or parties.

79.     The Regulation does not promote a compelling governmental interest, nor is it narrowly tailored.

80.     Not only is there no compelling governmental interest for the Regulation, it does not even bear a rational basis to a legitimate state purpose.  There is no basis whatsoever for classifying different types of outdoor signage differently based solely upon the date the device was established.

81.     Plaintiffs have been denied equal protection of the law.

82.     As a direct and proximate result, Plaintiffs seek a declaratory judgment declaring the Regulation unconstitutional on its face and as applied to Plaintiffs, enjoining Defendant from enforcing any portion of the Regulation, and for compensatory damages in an amount to be determined at trial.

83.     In the alternative, in the event it is determined by this Court that Defendant lawfully adopted and promulgated the Regulation, and that the Regulation was authorized by Kentucky's statutes, then Plaintiffs assert that the statute is unconstitutional for the same reasons stated above.

## COUNT FOUR
## VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983

84.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

85.     Defendant acted intentionally with respect to the enactment of the Regulation.

86.     The aforesaid actions of Defendant deprive Plaintiffs of their rights under the Kentucky and United States Constitutions.

87.     The aforesaid actions of Defendant were taken under color of state law and deprive Plaintiffs of their constitutional rights.

88.     Plaintiffs are entitled to money damages from Defendant pursuant to 42 U.S.C. § 1983.

89.     As a direct and proximate result of the aforesaid actions of Defendant, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT FIVE
## ATTORNEYS' FEES – 42 U.S.C. § 1988

90.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

91.     Defendant has violated Plaintiffs' civil rights pursuant to 42 U.S.C. Section 1983.

92.   Plaintiffs have expended, and continue to expend, significant amounts of money in order to bring this action to remedy Defendant's violation of their civil rights.

93.   Plaintiffs are entitled to recover their reasonable attorneys' fees and costs incurred in bringing this litigation pursuant to 42 U.S.C. § 1988.

**COUNT SIX**
**VIOLATION OF THE SUBORDINATION OF POWERS AND SEPARATION OF POWERS UNDER SECTIONS 26, 27, 28, AND 29 OF THE COMMONWEALTH OF KENTUCKY CONSTITUTION**

94.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

95.   Section 26 of the Constitution of Kentucky provides that the laws contrary to Kentucky's Bill of Rights are void.  This is a "solemn declaration" that there are no exceptions to the Bill of Rights.  *Commonwealth v. Jones*, 73 Ky. 725 (1874).

96.   Because the Regulation violates the Bill Rights including, *inter alia*, the rights of freedom of speech, due process, and equal protection, the Regulation is void.

97.   Section 27 of the of the Kentucky Constitution provides that the powers of government are divided among three branches: the legislative, executive, and judicial departments.  Pursuant to Section 28 of the Kentucky Constitution, one of the three departments of government may not exercise power belonging to another.  Section 29 of the Constitution of Kentucky provides as follows: "The legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.'"

98.   Kentucky is a strict adherent to the separation of powers doctrine.  In *Sibert v. Garrett,* 246 S.W.2d 455, 457 (Ky. 1922), the Supreme Court of Kentucky stated "[p]erhaps no state forming a part of the national government of the United States has a

constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does ... [the Kentucky] Constitution..."

99.     The adoption of the Regulation is in excess of Defendant's powers, is a usurpation of the legislative power which is exclusively reserved to the Kentucky General Assembly and the Kentucky judiciary, and is a violation of Sections 27, 28, and 29 of the Kentucky Constitution, all of which has caused and threatens to cause in the future irreparable harm to Plaintiffs for which there is no adequate remedy at law.

100.    As a direct and proximate result, Plaintiffs seek a declaratory judgment declaring the Regulation unconstitutional on its face and as applied to Plaintiffs, enjoining Defendant from enforcing any portion of it, and for compensatory damages in an amount to be determined at trial.

## COUNT SEVEN
## EX POST FACTO LAW

101.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

102.    The enforcement and threatened enforcement of the Regulation is the enforcement of an ex post facto law that impairs the obligations of the Plaintiffs' contracts and is a violation of Section 19 of the Kentucky Constitution which has caused and threatens to cause in the future irreparable harm to Plaintiffs for which there is no adequate remedy at law.

103.    As a direct and proximate result, Plaintiffs seek a declaratory judgment declaring the Regulation unconstitutional on its face and as applied to Plaintiffs,

enjoining Defendant from enforcing any portion of it, and for compensatory damages in an amount to be determined at trial.

104. In the alternative, in the event it is determined by this Court that Defendant lawfully adopted and promulgated the Regulation, and that the Regulation was authorized by Kentucky's statutes, then Plaintiffs assert that the statute is unconstitutional for the same reasons stated above.

## COUNT EIGHT
## WRIT OF MANDAMUS/INVERSE CONDEMNATION

105. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

106. In the alternative, Plaintiffs bring this claim against Defendant based upon the protections in the United States Constitution and Kentucky Constitution that guarantee that private property shall not be taken for public use without just compensation.

107. Mandamus is the appropriate action to compel public authorities to institute appropriations were an involuntary taking of private property is alleged.

108. Plaintiff hereby seeks a Writ of Mandamus to compel Defendant to initiate appropriation proceedings to compensate Plaintiffs for the taking of their property rights without due process of law and without the payment of just compensation.

109. A compensable taking occurs when a property owner demonstrates a substantial interference with the property right.

110. Defendant has taken, is presently taking, and will continue to take Plaintiffs' property rights without due process of law and without payment of just compensation.

111. The enforcement and threatened enforcement of the Regulation constitutes a regulatory taking in violation of Section 13 of the Kentucky Constitution which has caused and threatens to cause in the future irreparable harm to Plaintiff for which there is no adequate remedy at law.

112. Defendant has a clear legal duty to pay compensation to property owners for the taking of their property rights.

113. Defendant has failed to fulfill that duty.

114. Plaintiffs are entitled to a Writ of Mandamus compelling Defendant to perform the clear legal duty to compensate Plaintiffs for the taking of their property rights without due process of law and without payment of just compensation, and thus ordering Defendant to initiate appropriation proceedings.

## COUNT NINE
## DECLARATORY JUDGMENT

115. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully rewritten herein.

116. In addition to the other claims and bases for relief, Plaintiffs seek declaratory judgment on all issues raised herein pursuant to the Kentucky Declaratory Judgment Act, K.R.S. § 418.040, and the United States Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

117. Under the Kentucky Declaratory Judgment Act and the United States Declaratory Judgment Act, Plaintiffs seek a declaration of the parties' legal rights and a permanent injunction as to Defendant's enforcement of the unconstitutional Regulation, and as to Defendant's constitutional violations, in addition to all the other issues raised herein.

118.     As a result of the Regulation, an actual, justiciable controversy now exists between Plaintiffs and Defendant.

119.     K.R.S. § 418.045 authorizes that any person whose rights are affected by statute, municipal ordinance, or other government regulation may apply for and secure a declaration of his rights or duties.

120.     28 U.S.C. § 2201 similarly authorizes that any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal regulations of any interested party seeking such declaration.  28 U.S.C. § 2202 adds that further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse parties whose rights had been determined by such judgment.

121.     Under all of the circumstances alleged herein, substantial controversy exists between Plaintiffs and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests.

122.     By issuing declaratory judgment on the issues raised herein, this Court will settle the controversies between the parties, it will serve a useful purpose in clarifying the legal relations at issue, it will not raise procedural or res judicata concerns, it will not create friction between federal and state courts or encroach on state court jurisdiction, and it will provide an effective remedy.  This Court should exercise its discretion under the United States Dedicatory Judgment Act to resolve the issues raised.

WHEREFORE, Plaintiffs demand judgment as follows:

A.     For a declaratory judgment and temporary, preliminary, and permanent injunctive relief declaring the Regulation to be unlawful and unconstitutional in its

entirety; or, in the alternative, in the event it is determined by this Court that Defendant lawfully adopted and promulgated the Regulation, and that the Regulation was authorized by Kentucky's statutes, then Plaintiffs assert that the statute is unconstitutional for the same reasons stated above.

B.     For a declaratory judgment and temporary, preliminary, and permanent injunctive relief declaring the Regulation unconstitutional on its face and as applied to Plaintiffs and enjoining Defendant from enforcing any portion of the Regulation including, but not limited to, any enforcement actions or the imposition of criminal and civil penalties, and awarding compensatory damages pursuant to 42 U.S.C. § 1983 in an amount to be determined at trial;

C.     For a declaratory judgment and temporary, preliminary, and permanent injunctive relief that the acts, omissions, and conduct of Defendant as set forth herein has denied Plaintiffs equal protection of the law in violation of the United States and Kentucky Constitutions, and for an award of compensatory damages pursuant to 42 U.S.C. § 1983 in an amount to be determined at trial;

D.     For a declaratory judgment and temporary, preliminary, and permanent injunctive relief establishing that the acts, omissions, and conduct of Defendant as set forth herein constitute procedural and substantive violation of Plaintiffs' due process rights under United States and Kentucky Constitutions, and awarding compensatory damages pursuant to 42 U.S.C. § 1983 in amount to be determined at trial;

E.     For a declaratory judgment and temporary, preliminary, and permanent injunctive relief declaring the Regulation void under Section 26 of the Kentucky

Constitution and unconstitutional under sections 27, 28, and 29 of the Kentucky Constitution;

F. For an award of compensatory damages in amount to be determined at trial;

G. For pre-judgment and post-judgment interest;

H. For an award of Plaintiffs' costs, disbursements, and reasonable attorneys' fees and expert fees incurred by Plaintiffs in connection with this action pursuant to 42 U.S.C. § 1988;

I. In the alternative, for a Writ of Mandamus requiring Defendant to initiate appropriation proceedings to compensate Plaintiffs for the taking of their property at its highest and best use market value and to compensate Plaintiffs for the taking of their property rights, together with their reasonable attorneys' fees and costs;

J. For the costs of this action;

K. For all other and further relief, both legal and equitable, to which Plaintiffs may be entitled.

Respectfully submitted,

/s/  Michael A. Galasso
Michael A. Galasso (88895)
Robbins, Kelly, Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
T: (513) 721-3330 | F: (513) 721-5001
mgalasso@rkpt.com
**Attorney for Plaintiffs**
**Huntington Outdoor, LLC**
**Summit Locations, LLC**
**J.R. Promotions, LLC**

/s/  E. Adam Webb

E. Adam Webb (pro hac vice application forthcoming)
Webb, Klase & Lemond, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-0773
adam@webbllc.com
**Attorney for Plaintiffs**
**Huntington Outdoor, LLC**
**Summit Locations, LLC**
**J.R. Promotions, LLC**


/s/  Gary W. Napier

Gary W. Napier (82716)
Drayer B. Spurlock (86195)
Napier & Associates, PSC
300 W. 5th Street
London, Kentucky  40741
(606) 864-2263
gnapier@napierlawoffice.com
dspurlock@napierlawoffice.com
**Attorneys for Plaintiff**
**United Outdoor Media, LLC**